IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION AT KALAMAZOO

| | |
|---|---|
| Robert Parker and Paul Adams, | |
| *On behalf of themselves and those similarly situated*, | Case No. 1:20-cv-00277 |
| Plaintiffs, | Judge Janet T. Neff |
| v. | Magistrate Judge Ray Kent |
| Battle Creek Pizza, Inc., *et al.* | Jury Demand Endorsed Hereon |
| Defendants. | |

First Amended Class and Collective Action Complaint

## I. INTRODUCTION

1.      Robert Parker and Paul Adams, on behalf of themselves and all similarly situated individuals, bring this action against Defendants Battle Creek Pizza, Inc., Doe Corporations 1-10, John Doe 1-10 and Kevin Hershock (collectively, "Battle Creek Pizza" or "Defendants"). Plaintiffs seek appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiffs and similarly-situated individuals with minimum wages as required by the Fair Labor Standards Act ("FLSA"), M.C.L.A. §408.414, the Indiana Wage Payment Act ("IWPA"), Ind. Code § 22-2-5, and the Indiana Wage Deduction Act, Ind. Code § 22-2-6.

2.      Defendants operate approximately five Hungry Howie's pizza restaurants in the Battle Creek, Michigan area and Indiana.

3. Defendants repeatedly and willfully violated the Fair Labor Standards Act, M.C.L.A. §408.414, Ind. Code § 22-2-5 and Ind. Code § 22-2-6 by failing to adequately reimburse delivery drivers for their delivery-related expenses, thereby failing to pay delivery drivers the legally mandated minimum wages for all hours worked.

4. All delivery drivers at the Defendants' stores, including Plaintiff, have been subject to the same employment policies and practices, including policies and practices with respect to wages and reimbursement for out-of-pocket expenses.

5. Plaintiffs bring this action on behalf of themselves and similarly situated current and former delivery drivers who elect to opt in pursuant to FLSA, 29 U.S.C. § 216(b) to remedy violations of the FLSA wage and hour provisions by Defendants.

6. Plaintiff Robert Parker brings this action on behalf of himself and similarly situated current and former delivery drivers in Michigan, pursuant to Federal Rule of Civil Procedure 23, to remedy violations of M.C.L.A. §408.414 and M.C.L.A.§408.472.

7. Plaintiff Paul Adams brings this action on behalf of himself and similarly situated current and former delivery drivers in Indiana, pursuant to Federal Rule of Civil Procedure 23, to remedy violations of Ind. Code § 22-2-5 and Ind. Code § 22-2-6.

## II. JURISDICTION AND VENUE

8. Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

9. Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiffs' Michigan and Indiana law claims.

10.     Venue in this Court is proper under 28 U.S.C. § 1391(b) because the parties reside in this district and a substantial part of the events giving rise to the claim herein occurred in this district.

## III.   PARTIES

### PLAINTIFFS

### ROBERT PARKER

11.     Plaintiff Robert Parker resides in Battle Creek, Michigan. Further, at all times material herein, Plaintiff worked within the boundaries of the Western District of Michigan.

12.     Plaintiff was an "employee" of all of the Defendants as defined in the FLSA, the M.C.L.A. §408.414 and M.C.L.A. §408.472.

13.     Plaintiff has given written consent to join this action.

### PAUL ADAMS

14. Plaintiff Paul Adams resides in Fort Wayne, Indiana.

15.     Plaintiff was an "employee" of all of the Defendants as defined in the FLSA, Ind. Code § 22-2-5, and Ind. Code § 22-2-6.

16.     Plaintiff has given written consent to join this action.

### DEFENDANTS

17.     Defendants have jointly employed Plaintiffs and similarly situated delivery drivers at all times relevant.

18.     Each of the Defendants had substantial control over Plaintiffs and similarly situated delivery drivers' working conditions, and over the unlawful policies and practices alleged herein.

19.     Defendants are part of a single integrated enterprise.

20.     At all relevant times, the Hungry Howie's five restaurants shared common management and were centrally controlled and/or owned by Battle Creek Pizza.

21.     At all relevant times, all Defendants maintained control over labor relations at the Battle Creek Pizza restaurants.

22.     During all relevant times, Defendants permitted employees to transfer or be shared by and between the Battle Creek Pizza restaurants without retraining.

23.     Defendants share or co-determine those matters governing the essential terms and conditions of employment for Plaintiffs and similarly situated delivery drivers at the Hungry Howie's Stores.

24.     Defendants suffer or permit Plaintiffs and other delivery drivers to work.

25.     Defendants have direct or indirect control of the terms and conditions of Plaintiffs' work and the work of similarly situated delivery drivers, and also exercise that authority.

26.     During all relevant times, Defendants also exercised operational control over the delivery drivers at the Battle Creek Pizza stores, including, but not limited to, control over recruiting and training of delivery drivers, compensation of delivery drivers, job duties of delivery drivers, reimbursements to delivery drivers, recruiting and training managers, design and layout of the restaurants, sales and marketing programs, public relations programs, promotional services, appearance and conduct standards, inventory, and inventory controls.

## Battle Creek Pizza, Inc.

27.     Defendant Battle Creek Pizza, Inc. is a Michigan corporation with its principal place of business in Pinckney, Michigan.

28.     Kevin Hershock is the owner and operator of Battle Creek Pizza, Inc.

4

29.     Battle Creek Pizza, Inc. is the corporate entity that appears on Plaintiff's paystubs for work he completed for Defendants.

30.     Battle Creek Pizza, Inc. owns and operates approximately 5 Hungry Howie's restaurants in the Battle Creek, Michigan area and Indiana.

31.     Battle Creek Pizza, Inc. has substantial control over Plaintiffs and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

32.     Upon information and belief, Battle Creek Pizza, Inc. applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

33.     Battle Creek Pizza, Inc. has direct or indirect control of the terms and conditions of Plaintiffs' work and the work of similarly situated employees.

34.     At all relevant times, Battle Creek Pizza, Inc. maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

35.     Battle Creek Pizza, Inc. is an "employer" of Plaintiffs and similarly situated employees as that term is defined by the FLSA, M.C.L.A. §408.414, M.C.L.A. §408.472,  Ind. Code § 22-2-5, and Ind. Code § 22-2-6..

36.     At all relevant times, Battle Creek Pizza, Inc. has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

37.     Battle Creek Pizza, Inc.'s gross revenue exceeds $500,000 per year.

**KEVIN HERSHOCK**

38.     Kevin Hershock is the owner and operator of Battle Creek Pizza.

39.     Kevin Hershock is been the owner and operator of Battle Creek Pizza.

40.     Kevin Hershock is individually liable to Battle Creek Pizza's delivery drivers under the definitions of "employer" set forth in the FLSA, M.C.L.A. §408.472, Ind. Code § 22-2-5, and Ind. Code § 22-2-6 because he owns and operates Battle Creek Pizza's stores, serves as a manager of Battle Creek Pizza, ultimately controls significant aspects of Battle Creek Pizza's day-to-day functions, and ultimately controls compensation and reimbursement of employees.  29 U.S.C. § 203(d).

41.     At all relevant times, by virtue of his role as owner and operator of Battle Creek Pizza, Kevin Hershock has had financial control over the operations at each of the Battle Creek Pizza stores.

42.     At all relevant times, by virtue of his role as owner and operator of Battle Creek Pizza, Kevin Hershock has a role in significant aspects of the Battle Creek Pizza's day to day operations.

43.     At all relevant times, by virtue of his role as owner and operator of Battle Creek Pizza, Kevin Hershock has had control over Battle Creek Pizza's pay policies.

44.     At all relevant times, by virtue of his role as owner and operator of Battle Creek Pizza, Kevin Hershock has had power over personnel and payroll decisions at the Battle Creek Pizza stores, including but not limited to influence of delivery driver pay.

6

45.     At all relevant times, by virtue of his role as owner and operator of Battle Creek Pizza, Kevin Hershock has had the power to hire, fire and discipline employees, including delivery drivers at Battle Creek Pizza's stores.

46.     At all relevant times, by virtue of his role as owner and operator of Battle Creek Pizza, Kevin Hershock has had the power to stop any illegal pay practices that harmed delivery drivers at the Battle Creek Pizza's stores.

47.     At all relevant times, by virtue of his role as owner and operator of Battle Creek Pizza, Kevin Hershock has had the power to transfer the assets and liabilities of Battle Creek Pizza.

48.     At all relevant times, by virtue of his role as owner and operator of Battle Creek Pizza, Kevin Hershock has had the power to declare bankruptcy on behalf of Battle Creek Pizza.

49.     At all relevant times, by virtue of his role as owner and operator of Battle Creek Pizza, Kevin Hershock has had the power to enter into contracts on behalf of each of the Battle Creek Pizza's stores.

50.     At all relevant times, by virtue of his role as owner and operator of Battle Creek Pizza, Kevin Hershock has had the power to close, shut down, and/or sell each of the Battle Creek Pizza's stores.

51.     At all relevant times, by virtue of his role as owner and operator of Battle Creek Pizza, Kevin Hershock had authority over the overall direction of each of Battle Creek Pizza's stores and was ultimately responsible for their operations.

52.     The Battle Creek Pizza stores function for Kevin Hershock 's profit.

53.     Kevin Hershock has influence over how the Battle Creek Pizza's stores can run more profitably and efficiently.

7

**DOE CORPORATION 1-10**

54.     Upon information and belief, Defendants own and operate other corporate entities and/or limited liability companies that also qualify as Plaintiff's "employer" under the FLSA, Michigan law, and Indiana wage law.

55.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

## II.    FACTS

### CLASS-WIDE FACTUAL ALLEGATIONS

56.     During all relevant times, Battle Creek Pizza operated approximately five Hungry Howie's Pizza Stores in Michigan and Indiana.

57.     The primary function of the Battle Creek Pizza stores is to sell pizza and other food items to customers, whether they dine in, carry out, or have their food delivered.

58.     The Battle Creek Pizza stores employ delivery drivers who are primarily responsible for delivering pizzas and other food items to customers' homes and workplaces.

59.     Plaintiffs and the similarly situated persons Plaintiffs seek to represent are current and former delivery drivers employed by Defendants at the Battle Creek Pizza stores.

60.     All delivery drivers employed at the Battle Creek Pizza stores over the last three years have had essentially the same job duties—deliver pizza and other food items to customers.

61.     When there are no deliveries to make, Defendants' delivery drivers are required to work inside the Battle Creek Pizza stores building pizza boxes, cleaning, preparing pizza and other food items, and completing other duties inside the restaurant as necessary.

62.     At all relevant times, Plaintiffs and similarly situated delivery drivers have been paid an hourly wage rate at or close to minimum wage for the hours they worked for Defendants.

63.     Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

64.     Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cell phone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties.

65.     Pursuant to such requirements, Plaintiffs and other similarly situated employees purchase gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation, automobile financing, and incur cell phone and data charges all for the primary benefit of Defendants.

66.     The Battle Creek Pizza stores do not keep track of their delivery drivers' actual expenses.

67.     The Battle Creek Pizza stores do not reimburse delivery drivers for their actual expenses.

68.     The Battle Creek Pizza stores do not reimburse delivery drivers at the IRS standard business mileage rate for all of the miles they drive completing deliveries.

69.     At all relevant times, Plaintiffs and other similarly situated delivery drivers at the Battle Creek Pizza stores were reimbursed a flat per delivery amount of $1.00/delivery for the expenses they incurred. After March 2020, Plaintiff Paul Adams and similarly situated delivery drivers received $1.50/delivery.

70. Plaintiffs and similarly situated delivery drivers typically average four to five miles per round-trip delivery.

71. Plaintiffs and similarly situated delivery drivers typically make at least 3 deliveries per hour.

72. According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

   a. 2016: 54 cents/mile
   b. 2017: 53.5 cents/mile
   c. 2018: 54.5 cents/mile
   d. 2019: 58 cents/mile
   e. 2020: 57.5 cents/mile

73. As a result of the automobile and other job-related expenses incurred by Plaintiffs and other similarly situated delivery drivers, they were deprived of minimum wages guarantee to them by the FLSA, Michigan law, and Indiana law.

74. At all relevant times, Defendants have applied the same pay policies, practices, and procedures to all delivery drivers at the Battle Creek Pizza stores.

75. All of Defendants' delivery drivers had similar experiences to that of Plaintiffs. They were subject to the same reimbursement policy; received similar reimbursements; incurred similar automobile expenses; completed deliveries of similar distances and at similar frequencies; and were paid at or near the applicable minimum wage rate before deducting unreimbursed vehicle costs.

76. Regardless of the precise amount of the per-delivery reimbursement at any given point in time, Defendants' reimbursement formula has resulted in an unreasonable

underestimation of delivery drivers' automobile expenses throughout the recovery period, causing systematic violations of the minimum wage laws.

77.     Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. *See* 29 C.F.R. § 531.35.

Defendants have willfully failed to pay federal, Michigan, and Indiana state minimum wage to Plaintiffs and similarly situated delivery drivers at the Battle Creek Pizza stores.

### Plaintiffs' Individual Factual Allegations

78.     Plaintiff Parker worked at Battle Creek Pizza stores from approximately February 2019 until May 2019.

79.     Plaintiff Parker worked or covered shifts at Defendants' Battle Creek Pizza store on Columbia Ave, and was subject to the same compensation and reimbursement policies described herein at all three locations.

80.     Plaintiff Parker was paid minimum wage as an hourly rate for work performed inside the store.

81.     Plaintiff Parker was paid tipped $6.00 per hour while making deliveries.

82.     Plaintiff Parker delivered pizza and other food items to Defendants' customers' homes and businesses.

83.     When he was not making deliveries, Plaintiff Parker worked inside the restaurant, completing tasks such as checking out carryout customers, cutting pizza, folding pizza boxes,

cleaning up around the store, and taking care of other general tasks for the operation of the restaurant.

84.    At all relevant times, Plaintiff Parker received a flat per delivery reimbursement amount intended to cover his expenses.

85.    Plaintiff Parker was reimbursed $1.00 per delivery.

86.    When Defendants began taking a tip credit from Plaintiff Parker's wages, they did not properly inform him of the requirements for taking a tip credit.

87.    When they began taking a tip credit from Plaintiff Parker's wages, Defendants failed to inform Plaintiff of the cash wage he would ostensibly receive pursuant to the tip credit.

88.    When they began taking a tip credit from Plaintiff Parker's wages, Defendants failed to inform Plaintiff Parker of the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer, which amount may not exceed the value of the tips actually received by the employee.

89.    When they began taking a tip credit from Plaintiff Parker's wages, Defendants failed to inform Plaintiff Parker that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips.

90.    When they began taking a tip credit from Plaintiff Parker's wages, Defendants failed to inform Plaintiff Parker that the tip credit shall not apply to any employee who has not been informed of the tip credit requirements stated in 29 C.F.R. § 531.59(b).

91.     Alternatively, Defendants have failed to properly take a tip credit from Plaintiff Parker's wages because, after accounting for unreimbursed expenses, Defendants have taken more of a tip credit than they informed Plaintiff Parker they would be taking.

92.     Plaintiff Parker was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

93.     Plaintiff Parker was required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, financing, insurance, cell phone service, GPS service, and other equipment necessary for delivery drivers to complete their job duties.

94.     Plaintiff Parker purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile financing, automobile insurance, suffered automobile depreciation, and incur cell phone and data charges all for the primary benefit of Defendants.

95.     Defendants did not track the actual expenses incurred by Plaintiff Parker.

96.     Defendants did not reimburse Plaintiff Parker based on his actual delivery-related expenses.

97.     Plaintiff Parker was not reimbursed at the IRS standard mileage rate for the miles he drove while completing deliveries.

98.     During Plaintiff Parker's employment with Defendants, Defendants failed to adequately reimburse Plaintiff Parker for automobile and other job-related expenses.

99.     Plaintiff Parker regularly makes approximately 3 deliveries per hour during the hours he works as a delivery driver.

100.     Plaintiff Parker regularly drove approximately 4 miles round trip per delivery.

101. Thus, Defendants' average effective reimbursement rate for Plaintiff Parker was approximately $.25 per mile ($1.00 per delivery / 4 average miles per delivery).

102. In 2018, for example, the IRS business mileage reimbursement has been $.545 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. Thus in 2018, every mile driven on the job decreased his net wages by approximately $.295($.545 - $.25) per mile. Considering Plaintiff Parker's estimate of about 4 average miles per delivery, Defendants under-reimbursed him about $1.18 per delivery ($.295 x 4 average miles).

103. Thus, while making deliveries, Plaintiff Parker consistently "kicked back" to Defendants approximately $3.00 per hour ($1.00 per delivery x 3 deliveries per hour).

104. As a result of unreimbursed automobile expenses and other job-related expenses, Defendants have failed to pay Plaintiff Parker minimum wage as required by law.

105. Plaintiff Adams has worked at Battle Creek Pizza stores since approximately June 2017.

106. Plaintiff Adams works at Defendants' Battle Creek Pizza stores on Crescent Ave. and in Jefferson, Indiana and is subject to the same compensation and reimbursement policies described herein at both locations.

107. During parts of the relevant time period, Plaintiff Adams was paid $8.75 as an hourly rate for work performed inside the store.

108. Plaintiff Adams is paid tipped $6.00 per hour while making deliveries.

109. Plaintiff Adams delivers pizza and other food items to Defendants' customers' homes and businesses.

Case 1:20-cv-00277-JTN-RSK  ECF No. 81,  PageID.983  Filed 11/18/20  Page 15 of 34

110.    When he is not making deliveries, Plaintiff Adams worked inside the restaurant, completing tasks such as checking out carryout customers, cutting pizza, folding pizza boxes, cleaning up around the store, and taking care of other general tasks for the operation of the restaurant.

111.    At all relevant times, Plaintiff Adams receives a flat per delivery reimbursement amount intended to cover his expenses.

112.    Plaintiff Adams was reimbursed $1.00 per delivery. After March 2020, Plaintiff Adams started receiving $1.50 per delivery.

113.    When Defendants began taking a tip credit from Plaintiff Adams' wages, they did not properly inform him of the requirements for taking a tip credit.

114.    When they began taking a tip credit from Plaintiff Adams' wages, Defendants failed to inform Plaintiff Adams of the cash wage he would ostensibly receive pursuant to the tip credit.

115.    When they began taking a tip credit from Plaintiff Adams' wages, Defendants failed to inform Plaintiff Adams of the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer, which amount may not exceed the value of the tips actually received by the employee.

116.    When they began taking a tip credit from Plaintiff Adams' wages, Defendants failed to inform Plaintiff Adams that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips.

117.     When they began taking a tip credit from Plaintiff Adams' wages, Defendants failed to inform Plaintiff Adams that the tip credit shall not apply to any employee who has not been informed of the tip credit requirements stated in 29 C.F.R. § 531.59(b).

118.     Alternatively, Defendants have failed to properly take a tip credit from Plaintiff Adams' wages because, after accounting for unreimbursed expenses, Defendants have taken more of a tip credit than they informed Plaintiff Adams they would be taking.

119.     Plaintiff Adams is required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

120.     Plaintiff Adams is required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, financing, insurance, cell phone service, GPS service, and other equipment necessary for delivery drivers to complete their job duties.

121.     Plaintiff Adams purchases gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile financing, automobile insurance, suffered automobile depreciation, and incur cell phone and data charges all for the primary benefit of Defendants.

122.     Defendants do not track the actual expenses incurred by Plaintiff Adams.

123.     Defendants do not reimburse Plaintiff Adams based on his actual delivery-related expenses.

124.     Plaintiff Adams is not reimbursed at the IRS standard mileage rate for the miles he drives while completing deliveries.

125.     During Plaintiff Adams' employment with Defendants, Defendants have failed to adequately reimburse Plaintiff Adams for automobile and other job-related expenses.

16

126.    Plaintiff Adams regularly makes approximately 3 deliveries per hour during the hours he works as a delivery driver.

127.    Plaintiff Adams regularly drives approximately 5 miles round trip per delivery.

128.    Thus, Defendants' average effective reimbursement rate for Plaintiff Adams is approximately $.20 per mile ($1.00 per delivery / 5 average miles per delivery).

129.    In 2018, for example, the IRS business mileage reimbursement has been $.545 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. Thus in 2018, every mile driven on the job decreased his net wages by approximately $.345($.545 - $.20) per mile. Considering Plaintiff Adams' estimate of about 5 average miles per delivery, Defendants under-reimbursed him about $1.73 per delivery ($.345 x 5 average miles).

130.    Thus, while making deliveries, Plaintiff Adams consistently "kicked back" to Defendants approximately $5.19 per hour ($1.73 per delivery x 3 deliveries per hour).

131.    As a result of unreimbursed automobile expenses and other job-related expenses, Defendants have failed to pay Plaintiff Adams minimum wage as required by law.

## Collective Action Allegations

132.    Plaintiffs bring the First Count on behalf of themselves and all similarly situated current and former delivery drivers employed at the Battle Creek Pizza stores owned, operated, and controlled by Defendants, during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

17

133.    At all relevant times, Plaintiffs and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiffs and the FLSA Collective minimum wage for all hours worked and failing to reimburse delivery drivers for automobile expenses and other job-related expenses. Plaintiffs' claims are essentially the same as those of the FLSA Collective.

134.    Defendants' unlawful conduct is pursuant to a corporate policy or practice.

135.    Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked.

136.    Defendants are aware or should have been aware that federal law required them to reimburse delivery workers for expenses relating to "tools of the trade," such as, among other things, automobile costs and gasoline for delivery drivers.

137.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

138.    The First Count is properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

139.    The FLSA Collective members are readily identifiable and ascertainable.

140.    For the purpose of notice and other purposes related to this action, the FLSA Collective members' names and contact information are readily available from Defendants' records.

141.    In recognition of the services Plaintiffs have rendered and will continue to render to the FLSA Collective, Plaintiffs will request payment of a service award upon resolution of this action.

## Michigan Class Action Allegations

142.    Plaintiff Parker brings the Counts II and IV under Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendant at Battle Creek Pizza stores in the State of Michigan between March 30, 2017 and the date of final judgment in this matter ("Rule 23 Class").

143.    Excluded from Rule 23 Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

144.    The hours assigned and worked, the positions held, deliveries completed, and the rates of pay and reimbursements paid for each Rule 23 Class Member are determinable from Defendants' records.

145.    For the purpose of notice and other purposes related to this action, the Rule 23 Class Members' names and contact information are readily available from Defendants.

146.    Notice can be provided by means permissible under Federal Rule of Civil Procedure 23.

147.    The Rule 23 Class member are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

148.    There are more than 50 Rule 23 Class members.

149.    Plaintiff Parker's claims are typical of those claims which could be alleged by any Rule 23 Class member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class member in separate actions.

150.    Plaintiff Parker's and the Rule 23 Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage and failing to reimburse for expenses.

151.    Plaintiff Parker and the Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with M.C.L.A. §408.414 and M.C.L.A. §408.472.

152.    Plaintiff Parker and the Rule 23 Class members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct.  Defendants' corporate-wide policies and practices affected all Rule 23 Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each of the Rule 23 Class members.

153.    Plaintiff Parker and the Rule 23 Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

154.    By seeking to represent the interests of the Rule 23 Class members, Plaintiff Parker is exercising and intends to exercise his right to engage in concerted activity for the mutual aid or benefit of himself and his co-workers.

155.    Plaintiff Parker is able to fairly and adequately protect the interests of the Rule 23 Class and has no interests antagonistic to the Rule 23 Class.

156.    Plaintiff Parker is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

157.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

158.    Upon information and belief, Defendants and other employers throughout the state violate M.C.L.A. §408.414 and M.C.L.A. §408.472. Current employees are often afraid to assert their rights out of fear of direct and indirect retaliation.  Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.  Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

159.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

160.    Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Plaintiff Parker and the Rule 23 Class members individually and include, but are not limited to:

    a.   Whether Defendants paid Plaintiff Parker and the Rule 23 Class members at the proper minimum wage rate for all hours worked;

b.   Whether Plaintiff Parker and the Rule 23 Class members were subject to a common expense reimbursement policy that resulted in wages to drop below legally allowable minimum wage and overtime;

c.   Whether Plaintiff Parker and the Rule 23 Class were subject to a policy that required them to maintain and pay for safe, operable, and legally compliant automobiles to use in completing deliveries;

d.   Whether Plaintiff Parker and the Rule 23 Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

e.   Whether Defendants reimbursed Plaintiff Parker and the Rule 23 Class members for their actual expenses;

f.   Whether Defendants reimbursed Plaintiff Parker and the Rule 23 Class members at the IRS standard business mileage rate for the miles they drove in making deliveries;

g.   Whether Defendants reimbursed Plaintiff Parker and the Rule 23 Class members based on a reasonable approximation of the expenses they incurred;

h.   Whether Defendants failed to pay Plaintiff Parker and the Rule 23 Class in a timely manner as described by MCL §408.472, and, if so, whether the wages owed are "in dispute";

i.   Whether Defendants were unjustly enriched by Plaintiff Parker and the Rule 23 Class by having to provide and use their own vehicles for Defendants' benefit; and

j.   The nature and extent of class-wide injury and the measure of damages for those injuries.

161.   In recognition of the services Plaintiff Parker has rendered and will continue to render to the Rule 23 Class, Plaintiff Parker will request payment of a service award upon resolution of this action.

## Indiana Class Action Allegations

162.     Plaintiff Adams brings the Counts III and V under Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendant at Battle Creek Pizza stores in the State of Indiana between March 30, 2017 and the date of final judgment in this matter ("Rule 23 Class").

163.     Excluded from Rule 23 Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

164.     The hours assigned and worked, the positions held, deliveries completed, and the rates of pay and reimbursements paid for each Rule 23 Class Member are determinable from Defendants' records.

165.     For the purpose of notice and other purposes related to this action, the Rule 23 Class Members' names and contact information are readily available from Defendants.

166.     Notice can be provided by means permissible under Federal Rule of Civil Procedure 23.

167.     The Rule 23 Class member are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

168.     There are more than 50 Rule 23 Class members.

169.    Plaintiff Adams's claims are typical of those claims which could be alleged by any Rule 23 Class member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class member in separate actions.

170.    Plaintiff Adams's and the Rule 23 Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage and failing to reimburse for expenses.

171.    Plaintiff Adams and the Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with Ind. Code § 22-2-5 and Ind. Code § 22-2-6.

172.    Plaintiff Adams and the Rule 23 Class members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct.  Defendants' corporate-wide policies and practices affected all Rule 23 Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each of the Rule 23 Class members.

173.    Plaintiff Adams and the Rule 23 Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

174.    By seeking to represent the interests of the Rule 23 Class members, Plaintiff Adams is exercising and intends to exercise his right to engage in concerted activity for the mutual aid or benefit of himself and his co-workers.

175.    Plaintiff Adams is able to fairly and adequately protect the interests of the Rule 23 Class and has no interests antagonistic to the Rule 23 Class.

176.     Plaintiff Adams is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

177.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

178.     Upon information and belief, Defendants and other employers throughout the state violate Ind. Code § 22-2-5 and Ind. Code § 22-2-6. Current employees are often afraid to assert their rights out of fear of direct and indirect retaliation.  Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.  Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

179.     This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

180.     Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Plaintiff Adams and the Rule 23 Class members individually and include, but are not limited to:

> a.  Whether Defendants paid Plaintiff Adams and the Rule 23 Class members at the proper minimum wage rate for all hours worked;

b.  Whether Plaintiff Adams and the Rule 23 Class members were subject to a common expense reimbursement policy that results in wages to drop below legally allowable minimum wage and overtime;

c.  Whether Plaintiff Adams and the Rule 23 Class were subject to a policy that required them to maintain and pay for safe, operable, and legally compliant automobiles to use in completing deliveries;

d.  Whether Plaintiff Adams and the Rule 23 Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

e.  Whether Defendants reimbursed Plaintiff Adams and the Rule 23 Class members for their actual expenses;

f.  Whether Defendants reimbursed Plaintiff Adams and the Rule 23 Class members at the IRS standard business mileage rate for the miles they drove in making deliveries;

g.  Whether Defendants reimbursed Plaintiff Adams and the Rule 23 Class members based on a reasonable approximation of the expenses they incurred;

h.  Whether Defendants failed to pay Plaintiff Adams and the Rule 23 Class in a timely manner as described by Ind. Code § 22-2-5-1.

i.  Whether Defendants were unjustly enriched by Plaintiff Adams and the Rule 23 Class by having to provide and use their own vehicles for Defendants' benefit; and

j.  The nature and extent of class-wide injury and the measure of damages for those injuries.

181.    In recognition of the services Plaintiff Adams has rendered and will continue to render to the Rule 23 Class, Plaintiff Adams will request payment of a service award upon resolution of this action.

IV.   **Causes of Action**

**Count 1**
**Failure to Pay Minimum Wages - Fair Labor Standards Act**
**(On Behalf of Plaintiffs and the FLSA Collective)**

182.    Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

183.    Plaintiffs and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

184.    Defendants paid Plaintiffs and the FLSA Collective at or close to minimum wage for all hours worked.

185.    Defendants required and continue to require Plaintiffs and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket, and failed to properly reimburse Plaintiffs and the FLSA Collective for said expenses.

186.    By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiffs and the FLSA Collective.

187.    Plaintiffs and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

188.    As a result of Defendants' willful violations, Plaintiffs and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**Count 2**
**Failure to Pay Minimum Wage – M.C.L.A. §408.414**
**(On Behalf of Plaintiff Parker and Rule 23 Class)**

189.    Plaintiff Parker restates and incorporates the following allegations as if fully rewritten herein.

27

190.    Defendants paid Plaintiff Parker and Rule 23 Class below minimum wage for the hours they worked by requiring them to cover automobile expenses and other job-related expenses.

191.    The Michigan Workforce Opportunity Wage Act, M.C.L.A. §408.411, *et seq.* requires that employers be paid not less than minimum wage as determined by an inflation index (currently $9.25/hour) for all hours worked.

192.    Because Defendants required Plaintiff Parker and the Rule 23 Class to pay for automobile expenses and other job-related expenses out of pocket, Defendants failed to pay Plaintiff Parker and Rule 23 Class minimum wage.

193.    By not paying Plaintiff Parker and Rule 23 Class at least minimum wage for each hour worked, Defendants have violated M.C.L.A. §408.414.

194.    As a result of Defendants' violations, Plaintiff Parker and Rule 23 Class are entitled to damages, including, but not limited to unpaid wages, unreimbursed expenses, an additional one times unpaid wages/unreimbursed expenses in liquidated damages, costs, and attorney fees pursuant to MCL 408.419.

## Count 3
### Failure to Pay Minimum Wage – Indiana Code § 22-2-5
### (On Behalf of Plaintiff Adams and Rule 23 Class)

195.    Plaintiff Adams restates and incorporates the foregoing allegations as if fully rewritten herein.

196.    Defendants paid Plaintiff Adams and the Rule 23 Class below minimum wage for the hours they worked by requiring them to cover automobile expenses and other job-related expenses.

197.     Ind. Code § 22-2-5, *et seq.*, requires that all employers, including Defendants, pay their employees the amount due to the employee at least semimonthly or biweekly.

198.     Ind. Code § 22-2-5, *et seq.*, requires that payment shall be made for all wages earned to a date not more than 10 business days prior to the date of payment.

199.     Ind. Code § 22-2-5-2 allows employees who have been denied the timely payment of wages under Ind. Code § 22-2-5-1 to recover their unpaid wages, costs and attorneys' fees, and allows employees an additional two times their unpaid wages if the employer was not acting in good faith when they failed to pay all wages due to the employee.

200.     Defendants have failed to pay Plaintiff Adams and the Rule 23 Class their earned wages in accordance with Ind. Code § 22-2-5-1.

201.     By not paying minimum wage to Plaintiff Adams and the Rule 23 Class, Defendants have violated Ind. Code § 22-2-2-5.

202.     Defendants did not act in good faith in failing to pay Plaintiff Adams and the Rule 23 Class their earned wages.

203.     As a result of Defendants' failure to pay Plaintiff Adams and the Rule 23 Class in accordance with Ind. Code § 22-2-5, Plaintiff Adams and the Rule 23 Class are entitled to unpaid wages, unreimbursed expenses, an additional two times unpaid wages as damages, costs, and attorneys' fees.

## Count 4
## Unjust Enrichment
### (On Behalf of Plaintiff Parker and the Michigan Rule 23 Class)

204.     Plaintiff Parker restates and incorporates the foregoing allegations as if fully rewritten herein.

29

205.    Plaintiff Parker and the Rule 23 Class have conferred a benefit upon Defendants, namely, providing and maintaining "tools of the trade" for Defendants' benefit.

206.    The "tools of the trade" include vehicles, insurance for those vehicles, and cellphones.

207.    Defendants knew that Plaintiff Parker and the Rule 23 Class conferred that benefit on Defendants.

208.     As described above, Defendants received benefits as a result of Plaintiff Parker and the Rule 23 Class providing and maintaining "tools of the trade."

209.    The benefits include, but are not limited to, direct and indirect financial benefits like increased profits and increased ability to compete on the price of Defendants' products.

210.    Defendants did not compensate or under-compensated Plaintiff Parker and the Rule 23 Class for these benefits.

211.    Accordingly, an inequity would result to Plaintiff and Rule 23 Class because of the retention of this benefit by Defendants.

212.    As a result of Defendants having been unjustly enriched, Plaintiff Parker and the Rule 23 Class are entitled to compensation for the value of the benefit Plaintiff Parker and the Rule 23 Class conferred on Defendants.

### Count 5
**Unjust Enrichment**
**(On Behalf of Plaintiff Adams and the Indiana Rule 23 Class)**

213.    Plaintiff Adams restates and incorporates the foregoing allegations as if fully rewritten herein.

214.    Plaintiff Adams and the Rule 23 Class have conferred a benefit upon Defendants, namely, providing and maintaining "tools of the trade" for Defendants' benefit.

215.    The "tools of the trade" include vehicles, insurance for those vehicles, and cellphones.

216.    Defendants knew that Plaintiff Adams and the Rule 23 Class conferred that benefit on Defendants.

217.    As described above, Defendants received benefits as a result of Plaintiff Adams and the Rule 23 Class providing and maintaining "tools of the trade."

218.    The benefits include, but are not limited to, direct and indirect financial benefits like increased profits and increased ability to compete on the price of Defendants' products.

219.    Defendants did not compensate or under-compensated Plaintiff Adams and the Rule 23 Class for these benefits.

220.    Accordingly, an inequity would result to Plaintiff and Rule 23 Class because of the retention of this benefit by Defendants.

221.    As a result of Defendants having been unjustly enriched, Plaintiff Adams and the Rule 23 Class are entitled to compensation for the value of the benefit Plaintiff Adams and the Rule 23 Class conferred on Defendants.

**WHEREFORE**, Plaintiffs Robert Parker and Paul Adams pray for all of the following relief:

A.    Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class,

31

apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiffs and their counsel to represent the collective action members.

B.      Unpaid minimum wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

C.      Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

D.      Designation of Plaintiffs as representatives of the Rule 23 Class and counsel of record as Class Counsel.

E.      A declaratory judgment that the practices complained of herein are unlawful under the Workplace Opportunity Wage Act, M.C.L.A. §408.411, *et seq.*.

F.      A declaratory judgment that the practices complained of herein are unlawful under Ind. Code § 22-2-5, *et seq*. and Ind. Code § 22-2-6, *et seq.*

G.      An award of damages under M.C.L.A. §408.419, based on Defendants' failure to pay minimum wages, calculated as an additional one time of back wages as liquidated damages, attorneys' fees, and costs.

H.      An award of damages under the Ind. Code § 22-2-5, *et seq*. and Ind. Code § 22-2-6, *et seq.*, based on Defendants' failure to pay minimum wages, calculated as an additional two times of back wages as liquidated damages, attorneys' fees, and costs.

I.      An award of the value of the benefits for which Defendants were unjustly enriched;

J.      An award of prejudgment and post-judgment interest.

K.      An award of the value of the benefits for which Defendants were unjustly enriched on behalf of the Rule 23 Class.

L.      An award of costs and expenses of this action, together with reasonable attorneys'

fees and expert fees.

M.      Such other legal and equitable relief as the Court deems appropriate.

Respectfully submitted,

/s/Phil Krzeski
Bradley K. Glazier (P35523)
Robert M. Howard (P80740)
BOS & GLAZIER, P.L.C.
990 Monroe Avenue, N.W.
Grand Rapids, MI 49503
Telephone: (616) 458-6814
Email: *bglazier@bosglazier.com*

and

Andrew Kimble (*admitted pro hac vice*)
Philip Krzeski (*admitted pro hac vice*)
Nathan Spencer (*admitted pro hac vice*)
BILLER & KIMBLE, LLC
8044 Montgomery Road, Suite 515
513-202-0710 (Phone)
613-340-4620 (Fax)
*akimble@billerkimble.com*
*pkrzeski@billerkimble.com*
*nspencer@billerkimble.com*

*Counsel for Plaintiff and the putative class*

33

## **JURY DEMAND**

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

/s/ *Phil Krzeski*
Philip J. Krzeski