UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| Robert Parker, *et al.*, *On behalf of himself and those similarly situated*, Plaintiff, v. Battle Creek Pizza, Inc., *et al.*, Defendants. | Case No. 1:20-cv-00277 Judge Paul L. Maloney Magistrate Judge Ray Kent |

PLAINTIFFS' MOTION FOR SANCTIONS FOR DEFENDANTS' SPOLIATION OF EVIDENCE

On June 23, 2025, in their Response to Plaintiffs' Motion to Show Cause, Battle Creek Pizza revealed for the first time that they have spoliated crucial evidence in this case. *See* ECF 300. Plaintiffs ask the Court to sanction Defendants for their spoliation. To understand how the records were spoliated, Plaintiffs request that discovery be re-opened for limited purposes related to Defendants' spoliation of evidence. Plaintiffs' arguments are detailed in the attached Memorandum in Support.

Respectfully submitted,

*/s/Laura E. Farmwald*
Bradley K. Glazier (P35523)
Cunningham Dalman PC
940 Monroe Ave NW, Suite 253

i

Grand Rapids, MI 49422
Telephone: (616) 392.1821
Email: *brad@cunninghamdalman.com*

and

Andrew Biller (admitted (W.D. of Mich.)
Andrew Kimble (admitted W.D. of Mich.)
Laura E. Farmwald (admitted W.D. of Mich.)
Emily Hubbard (admitted W.D. of Mich.)
Biller & Kimble, LLC
8044 Montgomery Road, Suite 515
513-202-0710 (Phone)
614-340-4620 (Fax)
*abiller@billerkimble.com*
*akimble@billerkimble.com*
*lfarmwald@billerkimble.com*
*ehubbard@billerkimble.com*

*Counsel for Plaintiffs and the collective/class*

Memorandum in Support of
Plaintiffs' Motion for Sanctions for Defendants' Spoliation of Evidence

**1.    Introduction**

While this case was pending, Defendants lost access to 45% of the opt-ins' wage and hour records. Defendants do not dispute this. *See* ECF 300, PageID.4400.

There is also no dispute that Defendants never mentioned this data loss until late June 2025. And, even then, Defendants only admitted that they did not preserve the records when they could no longer hide that fact—in response to Plaintiffs' Motion for an Order to Show Cause.

Defendants' spoliation is severely prejudicial to Plaintiffs in their effort to prove the wage and hour violations they have alleged in this case.

Thus far, Defendants' only excuse is that the records are no longer in their "possession" because they changed payroll providers twice. But, this explanation leaves out that the records *were* in Defendants' possession—or, at the very least, within their control—during this case. Until they were abandoned by Defendants themselves.

Federal Rule of Civil Procedure 37(e) provides a remedy for this situation: the Court should impose a sanction against Defendants that cures the prejudice Defendants' deleterious behavior has caused to Plaintiffs. Even if Rule 37(e) did not apply, the Court has the inherent power to fashion an appropriate sanction for conduct which abuses the judicial process. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991).

At this point, the extent of spoliation and the reasons for it are not yet known. Plaintiffs therefore request an opportunity to conduct discovery into Defendants' spoliation. After that discovery is complete, Plaintiffs will seek specific sanctions based on a more complete record.

### 2. Factual and Procedural Background

Plaintiffs' Amended Complaint generally asserts wage and hour violations pursuant to the Fair Labor Standards Act and Michigan and Indiana law arising from Defendants' vehicle under-reimbursement practices. Plaintiffs allege that Defendants, a Hungry Howie's Pizza franchisee, systematically underpaid their delivery drivers by (1) paying them at or close to minimum wage while making deliveries, (2) requiring them to provide cars to use at work, and (3) not sufficiently reimbursing them for the vehicle expenses they incur for the benefit of the company. ECF 81. Plaintiff alleged a nationwide FLSA collective action and asserted Michigan and Indiana state statutory and common law claims on behalf of Defendants' drivers who worked in Michigan and Indiana. *Id.*

Since this case was filed in 2020, 184 delivery drivers have submitted consent to join forms, expressing their intent to pursue their FLSA claims in this action. *See, e.g.,* ECF 57-70, 73-74, 76-79, 85, 91, 102-103, 113, 208-209.

The case's history involves numerous starts and stops, most notably an appeal of a partial summary judgment decision. *See* Doc. 202-203.

The Sixth Circuit's Mandate issued on April 3, 2024. ECF 211. On April 26, 2024, the Court re-opened the case, set a status conference for June 5, 2024, and ordered the parties to submit "new proposals for how pizza-delivery drivers should be reimbursed for the cost of providing their vehicles for work" by May 29, 2024. ECF 213.

2

The parties attended a status conference on June 5, 2024. A new case management order was entered on June 28, 2024. ECF 221.

On September 18, 2024, less than three months after the Case Management Order was entered, Plaintiffs moved to compel production of several items in discovery, including the wage and hour records that are at issue in this Motion. ECF 224.

On September 26, 2024, Defendants opposed Plaintiffs' Motion to Compel. In their Opposition brief, Defendants did not claim that they did not have (or did not have "possession" of) the records Plaintiffs were seeking—they simply argued that Plaintiffs were not entitled to it. ECF 231.

On November 21, 2024, the Court held a hearing on Plaintiffs' motion. During that hearing, Defendants' counsel represented that he could produce Defendants' payroll records by December 2024. ECF 267, PageID.3655, p. 13:2-15. Defendants did not produce their records at that time.

On January 21, 2025, the Court ordered Defendants to produce their payroll records and other documents[1] by February 20, 2025. ECF 256, PageID.3309.

But, on February 20, Defendants did not produce any records. Instead, Defendant Kevin Hershock filed an affidavit that stated he "searched diligently for all documents or other records… responsive to the Court's January 21, 2025 Order" and that all such documents had been produced. ECF 270, PageID.3751.

---

[1] Including documents (from January 1, 2017 to present) evidencing: (1) payroll (hours worked, wages paid, and reimbursements provided) for each putative plaintiff, (2) deliveries completed and miles by each putative plaintiff, (3) expenses incurred by each putative plaintiff, (4) the identity of the person or persons who set defendants' pay policies, and (5) defendants' pay policies. *See* ECF 256, PageID.3309.

3

On February 23, 2025, Plaintiffs' counsel asked Defendants' counsel if they still intended to produce any of the information that Defendants had been ordered to produce. *See* Exhibit 1, Feb. 23, 2025 email from Laura Farmwald.

In response, Defendants' counsel stated they were working on obtaining "payroll summaries," which they claimed were not in their possession, but instead in the possession of a third party.[2] *See* Ex. 1, Feb. 25, 2025 email from Erik Johnson. There was no indication at this time that the records did not exist—just that they were in the possession of one of Defendants' vendors.

Defendants produced some supplemental payroll records on February 28, 2025, and March 12, 2025. *Id.*, Feb. 28, 2025 email from Erik Johnson, March 12, 2025 email from Erik Johnson.

As Plaintiffs suspected might happen (ECF 276, PageID.3874-3875), all of Defendants' supplemental production was produced in a degraded format that was difficult to use.[3] Because of the degraded format, Plaintiffs' counsel employed a third-party IT consultant to work with the records and convert them into a usable format. This was no small task and took a significant amount of time to complete.

After completing review of the supplemental document production, Plaintiffs discovered that the supplemental productions did not include complete payroll documents for the opt-in plaintiffs that the Court ordered Defendants to provide the payroll information for.[4] Defendants also failed to produce any additional documentation or supplementation of their interrogatory

---

[2] As noted above, Defendants did not raise any argument about "possession" of the payroll records in response to Plaintiffs' Motion to Compel Production. *See* ECF 231, 247. It was only after they were ordered to produce the information that they began to claim that the records were outside their possession.

[3] The payroll documents were again produced in an image-based PDF format. The February 28, 2025 supplemental documents were produced with a line through the text, and the March 12, 2025 documents were produced with heavy redaction in unusable format. As a result, exporting the data into a usable format was not feasible without the assistance of IT professionals.

[4] Defendants' production includes no records at all for 69 opt-ins, and incomplete records for 13 others.

4

responses, to provide the required documents/information about Defendants' pay policies, including when Defendants' reimbursement policy changed. *See generally,* Exhibit 1.

On May 27, 2025, after the review of the payroll documents was completed, Plaintiffs' counsel reached out to Defendants' counsel to explain the deficiencies that remained and demand production of the missing payroll records. *See* Exhibit 1, May 27, 2025 and May 28, 2025 emails from Laura Farmwald. On June 2, 2025, Plaintiffs' counsel identified each individual for whom payroll records were missing. *Id.*, June 2, 2025 email from Laura Farmwald.

In response, on June 4, 2025, Defendants' counsel stated, for the first time, that Defendants could not access the payroll records that had not been produced. "I believe the names you have identified below are the ones I have previously told you that the client is unable to access the documents because the payroll service is no longer in business, but I am double checking on that." *Id.*, June 4, 2025 email from Erik Johnson.

Contrary to Defendants' counsel's statement, Defendants never previously stated that Defendants could not access the information, or that the third party who was allegedly in possession of the records is no longer in business. Until the June 4 email, Defendants' counsel had repeatedly stated that his client was working with a third party to access the information. They never informed Plaintiffs that those efforts failed.

On June 5, 2025, Plaintiffs filed a Motion to Show Cause for Defendants' failure to provide said data/information, asserting that Defendants' failure to produce payroll records was a violation of the Court's January 21, 2025 discovery order.[5] *See* ECF 290. On June 23, 2025, Defendants

---

[5] As of the filing of this Motion and Plaintiffs' Show Cause Motion (ECF 290), Defendants have failed to produce the (1) weekly payroll (hours worked, wages paid, and reimbursements provided) for 82 opt-in plaintiffs, (2) information or documentation showing how or when Defendants' reimbursement policy changed, or (3) the identity of the person

5

filed their Response, in which they revealed for the first time that access to the payroll records had been lost because Defendants allowed their contracts with third-party vendors to lapse. ECF 300. The Court denied Plaintiffs' motion, finding that Plaintiffs had now shown "with clear and convincing evidence that the defendants violated a definite and specific order of the Court requiring them to perform." ECF 305.

On July 3, 2025, Plaintiffs filed a motion for relief related to Defendants' spoliation. ECF 300. On July 17, 2025, that motion was stricken for violating the Court's word limit. ECF 317.

Plaintiffs now renew their Motion for Sanctions as a result of Defendants' spoliation. Plaintiffs ask that discovery be re-opened for the limited purpose of discovering how and why the spoliation took place.

### 3. Argument

#### 3.1. Defendants have spoliated evidence.

Litigants have a duty to preserve evidence "where it is reasonably foreseeable that it is material to a potential legal action and properly discoverable." *DaimlerChrysler Motors v. Bill Davis Racing, Inc.*, 2005 U.S. Dist. LEXIS 38162, 2005 WL 3502172, at *2 (E.D. Mich. Dec. 22, 2005); Fed. R. Civ. P. 26. The obligation to preserve relevant evidence commences upon receipt of the summons and complaint. *Id.* at *1. From that point forward, defendants have "an affirmative obligation to preserve records and communications bearing in *any way*" upon the claims asserted in the Complaint. *Id.*; *See also In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006).("As soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action.") "Once the duty to

---

or persons who set defendants' pay policies. Defendants have also failed to provide any explanation for this continued deficiency and/or expressed any intention to cure it.

preserve attaches, the party "must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." *Phx. Process Equip. Co. v. Capital Equip. & Trading Corp.*, 2022 U.S. Dist. LEXIS 140668, 2022 WL 3094320 at *17 (W.D. Ky. July 18, 2022).[6] Simply making some effort is not sufficient. Instead, a party must take "reasonable steps to preserve relevant information." *Id.*, citing Rule 37(e). *See also, Edwards v. PJ Ops Idaho, LLC*, 2024 U.S. Dist. LEXIS 83920, at *13 (D. Idaho May 7, 2024) ("A party with actual or constructive knowledge of its duty to preserve ESI must take reasonable steps to preserve the ESI. Fed. R. Civ. P. 37(e). At a minimum, this involves 'suspend[ing] any existing policies related to deleting or destroying files and preserv[ing] all relevant documents related to the litigation.'") (additional citations omitted).

To establish spoliation, the moving party must show "(1) 'the party having control over the evidence had an obligation to preserve it at the time it was destroyed'; (2) the party that destroyed the evidence acted with a "culpable state of mind"; and (3) the evidence was relevant to a claim or defense. *Frank v. Good Samaritan Hosp. of Cincinnati*, 2023 U.S. App. LEXIS 6265, 2023 WL 2523297, at *3 (6th Cir. Mar. 15, 2023), quoting, *Beaven v. U.S. Dpt't of Just.*, 622 F.3d 540, 553 (6th Cir. 2010).

Plaintiffs can satisfy these elements. First, Defendants had an obligation to control the evidence—their own payroll records—under both the FLSA and as a litigant, but no longer have access to it. Second, a "culpable state of mind" can be established by showing that the evidence

---

[6] Because of the remedial nature of the FLSA, this obligation is especially strict for an employer in a wage case. The FLSA requires employers to "make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him[.]" 29 U.S.C. 211(c). And, the Supreme Court has required for over 80 years that FLSA disputes be primarily adjudicated by reference to the employer's records because "it is the employer…who is in the best position to know and to produce the most probative facts concerning the nature and amount of work performed." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946).

7

was destroyed knowingly, negligently, or with intent. *Adkins v. Wolever*, 692 F.3d 499, 504-505 (6th Cir. 2009). Here, Defendants knew the information was crucial but seemingly took no steps to preserve it. Their actions have been negligent, at the very least. "The severity of spoliation sanctions varies widely, and district courts possess wide discretion to tailor the sanction based on the degree of culpability attributed to the culpable party." *Frank,* 2023 U.S. App. LEXIS 6265, at *3, citing, *Adkins* at 652-53. Third, the evidence is obviously relevant to Plaintiffs' claims for unpaid minimum wages.

As detailed above, Defendants had every reason to preserve their employee records given the nature of the case, the filings, and the parties' correspondence. Nonetheless, they lost access to the records, either intentionally or with blatant disregard to their known obligations.

Defendants' Response to Plaintiffs' Motion for Order to Show cause, filed June 23, 2025, explained for the first time Defendants' changes to their payroll providers that have, according to them, resulted in loss of relevant information.

First, the relevant time period started on March 27, 2017. Defendants do not explain who handled their payroll from March 27, 2017 to December 31, 2017. *See* ECF 300 (addressing time period from January 1, 2018 forward). Based on Plaintiffs' review, 18 individuals' records are missing from this period.

Second, from January 1, 2018 until December 31, 2020, Defendants claim that a company called "Heartland" maintained their payroll records. Defendants do not explain why they changed to Heartland or what they did to ensure they did not lose any records relevant to this litigation during the transition from their prior payroll provider to Heartland. Based on Plaintiffs' review, 62 individuals' records are missing from this period.

Third, since January 1, 2021, Paychex have maintained Defendants' payroll records. Again, Defendants do not explain why they changed payroll providers again, nor do they explain what they did not ensure they did not lose any records relevant to this litigation during the transition from Heartland to Paychex. Based on Plaintiffs' review, at least 2 records are missing from this period.

Battle Creek Pizza seems to take the position that they have done nothing wrong by allowing these crucial records to go missing. They claim, simply, "[t]here are no more records in Defendants' possession nor are there any further records which can be recovered." ECF 300, PageID 4400. But this is precisely the problem. Knowing they had possession of—or, at the very least, access to—records relevant to this litigation, Battle Creek Pizza neglected their obligation to maintain the information. Plaintiffs are left with no way to determine the hours worked by and wages paid to a sizeable portion of the FLSA collective.[7]

Battle Creek had control over its employees' payroll records and had an obligation to preserve those records not only because they were relevant to Plaintiffs' wage and hour claims, but also by statutory obligation imposed by the FLSA. *See* 29 USC 211(c). The statutory duty on Defendants to maintain these payroll records until after the lawsuit has been filed demonstrates at the very least gross negligence.

### 3.2.    The Court should sanction Defendants for their deleterious behavior.

Plaintiffs seek an award of sanctions resulting from Defendants' failure to properly preserve records. Sanctions are available under both Rule 37 and the Court's inherent power to fashion an

---

[7] Plaintiffs do not yet know how much of the putative Rule 23 class's records are available. But, based on what is available for the individuals who opted into this case years ago, Plaintiffs suspect there are also records missing in relation to the putative Rule 23 class members.

appropriate sanction for conduct which abuses the judicial process. *Chambers* at 43. This remedy is appropriate in situations such as this where information should have been preserved but was not. *See, e.g., Adkins v. Wolever,* 554 F.3d 650, 651 (6th Cir. 2009).

> Rule 37(e) directly speaks to the situation here:
>
> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court: (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice.

Importantly, Rule 37(e)(1) does not require a showing of intentional spoilation. The Supreme Court has instructed that Rule 37 sanctions must be applied diligently both "to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent." *Roadway Express*, 447 U.S. 752, 763-64 (1980) (quoting *NHL v. Metro. Hockey Club*, 427 U.S. 639, 643 (1976).

Defendants had a duty to preserve wage and time worked records for their pizza delivery drivers in a lawsuit involving the wages they pay to their delivery drivers and the hours the delivery drivers worked. Because the criteria for establishing spoliation of ESI are met, requiring the Defendants to shoulder the cost of remedying their spoliation is appropriate.

Alternatively, the Court has the inherent power to address this situation. First, the Court has inherent authority to craft proper sanctions for spoliated evidence. *Adkins* at 451 ("We now recognize--as does every other federal court of appeals to have addressed the question--that a federal court's inherent powers include broad discretion to craft proper sanctions for spoliated evidence.")

Under its inherent powers, a district court may levy sanctions in a number of forms. *Chambers*, 501 U.S. 32 at 45; *Roadway Express, Inc.*, 447 U.S. at 764. When choosing among possible sanctions, the Court should consider a sanction designed to: (1) penalize those whose conduct may be deemed to warrant such a sanction; (2) deter parties from engaging in the sanctioned conduct; (3) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (4) restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party. *NHL* 427 U.S. at 643; *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983); *West v. Goodyear Tire and Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999). "A proper sanction will serve the purposes of leveling the evidentiary playing field and sanctioning the improper conduct." *Byrd v. Alpha All. Ins. Corp.*, 518 F. App'x 380, 385 (6th Cir. 2013), quoting, *Adkins*, 554 F.3d at 652-653. A party's destruction of evidence need not be in 'bad faith' to warrant the imposition of sanctions. *Daimler Chrysler Motors*, 2005 U.S. Dist. LEXIS 38162, *6-7. "Because failures to produce relevant evidence fall along a continuum of fault-ranging from innocence through the degrees of negligence to intentionality, the severity of a sanction may, depending on the circumstances of the case, correspond to the party's fault." *Byrd* at 385-386. Therefore, a district court may impose a broad range of sanctions for spoliated evidence, granting summary judgment, or instructing a jury that it may infer a fact based on lost or destroyed evidence. *Id.* at 386.

As a result of Defendants' spoliation, Plaintiffs are left without some of the most crucial information necessary to prove their claims. The Supreme Court, for 80 years, has envisioned that employees claiming unpaid wages would be able to rely on their employer's records to prove their case. *Anderson* at 687-688.

Here, Defendants have, either recklessly or intentionally, allowed the records to vanish *after* the lawsuit commenced. Thus, the penalty for spoliation cannot simply be to apply the same framework for adjudicating FLSA cases that ordinarily applies in the absence of records. *See Anderson* at 687-688.

However, because the extent of the spoliation that has taken place, the reasons for it, and the harm that will result to Plaintiffs from it, are not yet known, Plaintiffs ask the Court for 90 days from the Court's Order to conduct discovery into the spoliation. Thereafter, Plaintiffs will file a request for a specific sanction.

4. Conclusion

Plaintiffs ask the Court to hold that Defendants have spoliated wage and hour records, and permit Plaintiffs 90 days for leave to conduct discovery into the spoliation and, thereafter, request sanctions tailored to the situation.

Respectfully submitted,

*/s/Laura E. Farmwald*
Bradley K. Glazier (P35523)
Cunningham Dalman PC
940 Monroe Ave NW, Suite 253
Grand Rapids, MI 49422
Telephone: (616) 392.1821
Email: *brad@cunninghamdalman.com*

and

Andrew Biller (admitted (W.D. of Mich.)
Andrew Kimble (admitted W.D. of Mich.)
Laura E. Farmwald (admitted W.D. of Mich.)
Emily Hubbard (admitted W.D. of Mich.)
Biller & Kimble, LLC
8044 Montgomery Road, Suite 515
513-202-0710 (Phone)
614-340-4620 (Fax)

*abiller@billerkimble.com*
*akimble@billerkimble.com*
*lfarmwald@billerkimble.com*
*ehubbard@billerkimble.com*

*Counsel for Plaintiffs and the collective/class*

## Certificate of Word Count

Pursuant to Local Rule 7.3(b), I certify that Plaintiffs' Motion for Sanctions for Defendants' Spoliation of Evidence and To Re-Open Discovery for Limited Purposes, is within the 4,300 word limit as it contains 3,558 words, using Microsoft Word version 2408.

Respectfully submitted,

*/s/Laura E. Farmwald*
Laura E. Farmwald

13