UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT PARKER,

    Plaintiff,

vs.

BATTLE CREEK PIZZA, INC.,
KEVIN HERSHOCK,
DOE CORPORATION 1-10; and
JOHN DOE 1-10,

    Defendants.

Case No. 1:20-cv-00277

Honorable Paul L. Malony

Magistrate Judge Ray Kent

**DEFENDANTS' RESPONSE *OPPOSING* PLAINTIFFS'
MOTION FOR SANCTIONS (ECF No. 319)**

Plaintiffs are seeking a second bite at the apple. Plaintiffs filed previously a motion to show cause for Defendants' alleged failure to comply with Court order. ECF No. 290. They argued Defendants had spoliated documents and that they should be allowed to depose Defendants to determine what happened to pre-2018 documents. ECF No. 290 at PageID.4325-29. The Court asked Plaintiffs to explain the relevance of the pre-2018 records. *See* **Exhibit A** – 6/25/25 Hrg' Tr. at PageID.4568. Plaintiffs could not articulate a single reason why the pre-2018 documents would be relevant. *Id*. at PageID.4568-69. Plaintiffs recognized that Defendants paid a tipped-minimum wage and that the only issue in this case is whether Defendants' *vehicle reimbursements* covered each Plaintiffs' actual vehicle costs, which has nothing to do with pre-2018 payroll documents. *Id*. The Court denied the motion. ECF No. 305.

60281111.1

In the present motion,[1] Plaintiffs are again seeking to reopen discovery to explore issues related to the pre-2018 documents. ECF No. 319. The motion should be denied for three reasons: (1) the motion is an improper motion for reconsideration, (2) the records are not relevant to any claim or defense in this case, and (3) there was no spoliation of evidence.

**A.  The motion is an improper motion for reconsideration.**

Plaintiffs filed previously a motion to show cause for Defendants' failure to comply with Court order seeking additional discovery related to pre-2018 documents. ECF No. 290. The Court denied that motion. ECF No. 305. On July 21, 2025, Plaintiffs filed the present motion again seeking additional discovery related to the pre-2018 documents. ECF No. 319. In other words, this is a motion to reconsider allowing discovery on pre-2018 documents.

A motion for reconsideration is not an opportunity to present new arguments that could have been presented before the court issued its ruling, but an opportunity for the court to reconsider those arguments already presented. *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998); *see Evanston Ins*., 683 F.3d at 692 (reviewing the district court's application of the palpable defect standard and upholding the denial of the motion for reconsideration because the arguments advanced in the motion were not raised during the prior proceedings). Neither is a motion for reconsideration a second opportunity for a party to present "new explanations, legal theories, or proofs." *Jinks v. AlliedSignal, Inc*., 250 F.3d 381, 385 (6th Cir. 2001). A motion for reconsideration may be granted when the moving party demonstrates a "palpable defect" by which the Court and parties have been misled and a showing that a different

---

[1] Plaintiffs style their motion as one for sanctions, but they do not specifically seek any sanctions. They ask the Court to find Defendants spoliated evidence, and then they ask for 90 days of discovery to prove the extent of spoliation. Mot. at PageID.7233. After 90 days, Plaintiffs will then move for "tailored" sanctions. *Id.* This is no different than what was requested and denied in ECF Nos. 290, 300, and 305.

2

disposition of the case must result from the correction of the mistake. W.D. Mich. L.R 7.4(a). The decision to grant or deny a motion for reconsideration under this Local Rule is within the district court's discretion. *See Evanston Ins. Co. v. Cogswell Props.*, LLC, 683 F.3d 694, 681 (6th Cir. 2012) (citation omitted).

Here, Plaintiffs are seeking nearly identical, if not actually, relief from their first motion seeking discovery related to pre-2018 documents. Plaintiffs are simply advancing new theories as to why discovery into pre-2018 documents should be allowed. What Plaintiffs have not done is show a palpable defect in the Court's first ruling. Instead, Plaintiffs simply present new explanations and legal theories as to why additional discovery should be granted that could have, but were not, previously argued. *See id.* Because this is a disguised motion for reconsideration and yet there is no palpable defect, the motion should be denied.

**B.  The pre-2018 documents are not relevant.**

As discussed at the June 25, 2025 hearing, the only issue in this case is whether Defendants' vehicle reimbursement rates fully compensated Plaintiffs' actual vehicle expenses. *See* **Exhibit A** at PageID.4567-69, specifically PageID.4568:1-9. It is a simple math comparison that requires knowing the reimbursement rates, the miles driven, and the *actual* vehicle costs. Actual cost, after all, is what Judge Kethledge writing for the unanimous Sixth Circuit held should be the controlling law of this case. *See Parker v. Battle Creek Pizza, Inc.*, 95 F.4th 1009 (6th Cir. 2024). Plaintiffs concede this because they did this exact calculation in support of their (belated and unauthorized) motion for partial summary judgment. *See* Exhibit 9 to Pl. Mot. for Partial Summ. J. (ECF No. 328-12). In Exhibit 9, Plaintiffs attached a spreadsheet with each Plaintiff's and Opt-in Plaintiff's name, the miles they drove, the reimbursement rates, and the *alleged* (and unsupported) vehicle

3

expenses. *Id*. For example, with respect to Plaintiff Paul Adams in 2018, Plaintiffs present his information as follows:[2]

| First Name | Last Name | Reimbursements | Miles Driven | IRS Rate | Vehicle Expenses | Tipped Payrate | FLSA Unpaid Wages |
|---|---|---|---|---|---|---|---|
| Paul | Adams | $2,239.00 | 7,959.29 | 0.545 | $4,337.81 | $6.00 | $2,842.98 |

Plaintiffs allege that Paul Adams' unpaid wages in 2018 were $2,842.98. They arrived at that number by multiplying the miles driven (7,959.29) times the IRS Rate ($0.545) minus reimbursements paid ($2,239), which equals $2,098.81. Plaintiffs then add improperly the differential between what Plaintiffs are calling the "tipped rate" ($6.00) and the federal minimum wage ($7.25) compounding this error on the bold and wholly untrue and unsupported idea that Defendants are somehow not entitled to the "tip credit" every *employer* is granted in this context. Plaintiffs add $744.16 to reach $2,842.98. Adams received a tipped minimum wage, which in 2018, was $7.25 under Indiana wage law and the FLSA.

There are numerous problems with Plaintiffs' calculations. For example, there is no dispute that Plaintiffs were paid a tipped minimum wage ($7.25), so there is no basis to include the tip credit differential in the calculation. And the vehicle expenses column does not reflect actual vehicle expenses. The vehicle expenses column is simply the miles driven by the driver multiplied by the *IRS Rate*, which the Sixth Circuit has told Plaintiffs that they cannot do. *See Parker*, 95 F.4th at 1017 (explaining "the IRS rate does not even purport to measure the vehicle costs of any individual employee").

---

[2] There are additional columns in the spreadsheet which are not related to the calculation. They were omitted to save space. The full exhibit can be seen at ECF No. 328-12.

Setting aside Plaintiffs' input errors, Plaintiffs are again conceding that this case is about one issue: reimbursement rates less *actual* vehicle expenses for each Plaintiff and each Opt-in Plaintiff. *See* Exhibit 9 to Pl. Mot. for Partial Summ. J. (ECF No. 328-12). The wage records do not add anything to that calculation, or sine any light on it, whether pre- or post-2018. The reimbursement rate amounts in this case are not in dispute. The tipped minimum wage is not in dispute. The miles driven by each Plaintiff and Opt-in Plaintiff are not in dispute. The elephant in the room, and the issue Plaintiffs are doing everything in their power to avoid, is that Plaintiffs cannot satisfy their portion of the equation—*proving what actual vehicle expenses were*.

There are simply no relevant documents which have not been produced. And the request at issue has nothing to do with what matters. Plaintiffs' motion is nothing more than an attempt to distract from the true failing in this case—Plaintiffs' lack of vehicle records or proof of expenses.

**C. There is no Spoliation.**

There has not been any spoliation of records. To establish spoliation, the moving party "must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind'; and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Beaven v. U.S. Dep't of Just.*, 622 F.3d 540, 553 (6th Cir. 2010) (quoting *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002)); *see also* Mot. at PageID.7228. "[O]nly upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may" a court subject a party to severe sanctions. Fed. R. Civ. P. 37(e)(2); *see also Hoffer v. Tellone*, 128 F.4th 433, 435 (2d Cir. 2025) (recognizing *Residential Funding Corp.* was superseded by the Rule). Defendants cannot satisfy any of these elements.

5

**a. Defendants did not have an obligation to preserve three years of records.**

Defendants were not under an obligation to preserve pre-2018 records. Plaintiffs filed this case on March 27, 2020. ECF No. 1. Ordinary FLSA violations are subject to a two-year statute of limitations, while willful violations are subject to a three-year statute of limitations. 29 U.S.C. § 255(a). "Congress intended to draw a significant distinction between ordinary violations and willful violations." *McLaughlin v. Richland Shoe Co*., 486 U.S. 128, 132 (1988). A willful violation is one in which the employer knowingly violated the FLSA or showed reckless disregard of the FLSA. *Id*. at 133. Defendants were only obligated to maintain records from March 27, 2018 forward in this case.

When this case was filed, there was a split among district courts in FLSA pizza delivery driver under-reimbursement cases. Some courts found that the IRS Rate must be paid to delivery drivers on a per mile basis and anything less amounted to an FLSA violation for tipped minimum wage employees. Other courts, the majority, found that employers could reasonably approximate vehicle expenses. *See Parker*, 95 F.4th at 1012 (consolidating two cases representing the two different approaches). Based on that split alone, Defendants could not have knowingly violated the FLSA and certainly they did not show reckless disregard of the FLSA.

However, the Sixth Circuit rejected *both* approaches and sent the cases back to the district courts with some suggestions on how best to proceed. *Id.* at 1019. Defendants cannot willfully violate the FLSA where the standard for under-reimbursement was not clear and the prevailing standards were both rejected by the Sixth Circuit. Given that Defendants did not knowingly violate the FLSA or show reckless disregard of the FLSA, Plaintiffs cannot establish a willful violation of the FLSA. Therefore, Defendants were only required to maintain records from 2018 forward.

**b. The records were not destroyed "with a culpable state of mind."**

As an initial matter, Plaintiffs assert that records have been destroyed, which in fact have not been. Plaintiffs have moved repeatedly to compel production of documents which Defendants have shown repeatedly are in the document production. The same is true for the present motion. For example, in Exhibit 9 to Plaintiffs' motion for summary judgement, Plaintiffs finally show which documents they believe are missing. Where Plaintiffs say they do not have documents, they have concocted a formula to estimate the miles driven and indicate the estimate by putting the number in red. *See* ECF 328-12 at PageID.8027-28. But the underlying mileage information is not missing.

For example, Plaintiffs represent that Zachary Purvis drove 12,991.82 miles based on estimates made by Plaintiffs due to lack of documents. *See* ECF No. 315-12. The document production, however, shows that in 2018, Zachary Purvis drove 4,286.34 miles, *See* **Exhibit B** – BCP-000096, which is 8,705.48 miles less than Plaintiffs' estimate. It is even worse in 2017. Purvis drove 311.48 miles in 2017, *see* **Exhibit C** – 2017 Dispatch Summary, but Plaintiffs estimate Purvis drove 6,057.50 miles, see Exhibit 9, which is over nineteen times more miles than he actually drove.

Purvis was chosen at random, but to illustrate the point, Trisha Warner, the first Opt-in Plaintiffs identified in their spreadsheet further illustrates the point. Plaintiffs estimate Warner drove 15,702.45 miles in 2017. Exhibit 9. She actually drove 2,273.44 miles in 2017, see **Exhibit D** – Warner Dispatch Summary, a difference of *over 13,000 miles*. While Defendants may do a comprehensive review of these errors in response to Plaintiffs' (late and unauthorized) motion for summary judgment, there can be no doubt Plaintiff's invention of miles and cost has no basis in actual fact.

60281111.1

This problem of Plaintiffs accusing Defendants of not producing documents (and now destroying documents) and then later learning the documents have been produced has persisted throughout this litigation. Plaintiffs fail to properly review the document production, file a motion to compel accusing Defendants of wrongdoing, and Defendants spend hours refuting Plaintiffs' demonstrably false assertions. Plaintiffs are using these baseless motions to harass Defendants and to have Defendants review the discovery for Plaintiffs. The current motion is simply a variation of this same theme.

The only documents Defendants did not produce are the pre-2018 payroll records, which they admitted. Even assuming these records are somehow relevant, there is no evidence Defendants intentionally destroyed those records with a culpable state of mind.[3] Those records were kept by Defendants' prior payroll provider Payroll 1. *See* ECF No. 300 at PageID.4400. Heartland acquired Payroll 1 in 2015. *Id*. At some point, Heartland stopped maintaining the Payroll 1 records, unbeknownst to Defendants. *Id.*

Plaintiffs will likely argue that those facts are based strictly upon Defendants' representations in their response to Plaintiffs' motion for an order to show cause. Perhaps, but then why not destroy the 2018 payroll records or the 2019 records? Defendants produced other 2017

---

[3] Plaintiffs assert that a "culpable state of mind" can be shown even if the destruction was negligent. Mot. at PageID.7228-29. That simply is not true. *Hoffer* made this point clear:

> We hold that to impose sanctions pursuant to Rule 37(e)(2), a district court or a jury must find, by a preponderance of the evidence, that a party acted with an "intent to deprive" another party of the lost information. Consistent with this holding, we further hold that the lesser "culpable state of mind" standard, which includes negligence, *see Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 108 (2d Cir. 2002), does not apply to the imposition of sanctions under Rule 37(e)(2).

*Hoffer*, 128 F.4th at 435.

60281111.1

documents. They just did not produce the pre-2018 payroll records, because they no longer exist, which contain the same information as the payroll records from 2018 to the present. What could possibly be in those records that would help Plaintiffs' case? Nothing. Plaintiffs do not even put forth any theory of how those records are somehow vital to their case. Instead, they say the documents are "crucial" without ever saying why. *See* Mot. at PageID.7220, 7229.

The motion should be denied because Plaintiffs have not and cannot show a culpable state of mind to deprive Plaintiffs of the pre-2018 payroll documents.

### c.  The documents were not relevant to any claim or defense.

As explained in Section B above, the pre-2018 payroll records are not relevant to any claim or defense in this case. For this additional reason, the motion should be denied.

### CONCLUSION

For the reasons stated above, Plaintiffs' motion should be denied, and Plaintiffs should be required to pay Defendants' costs to respond to this frivolous motion.

Respectfully submitted,

Dated: August 4, 2025            By:    /s/ Patrick C. Lannen
                                        Patrick C. Lannen
                                        Attorney for Defendants
                                        Stinar Gould Grieco & Hensley
                                        280 W. Maple Road, Ste. 230
                                        Birmingham, MI 48009
                                        patrick@sgghlaw.com

9

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 4, 2025, a copy of the foregoing document was filed with the Clerk of the Court using the CM/ECF system which served notification of such filing upon the attorney(s) of record in this matter who are registered with the system.

I declare under the penalty of perjury that the foregoing statement is true to the best of my knowledge and belief.

<em>/s/Patrick C. Lannen</em>

60281111.1